UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| JAMES F. JACONO, | : | Bankruptcy No. 06-13912DWS |
| | : | |
| Debtor. | : | |

# MEMORANDUM OPINION

### BY:  DIANE WEISS SIGMUND, Chief Bankruptcy Judge

Before the Court is the Motion to Dismiss With Prejudice the above captioned Chapter 13 case ("Dismissal Motion") filed by the United States of America through the Department of Housing and Urban Development ("HUD").  The Dismissal Motion is the latest of a series of legal actions in this and the United States District Court for the Eastern District of Pennsylvania (the "District Court") by HUD to secure relief to foreclose on a mortgage delivered by William Jacono ("William"), the deceased father of Debtor, on  residential property at 4178 Oliver Street, Boothwyn, Pennsylvania (the "Property").  The mortgage loan, commonly referred to as a reverse mortgage, was granted to William on or about June 11, 1993 through HUD's Home Equity Conversion Mortgage Program ("HECM") and was secured by the Property where Debtor now resides.  For the reasons that follow, the Dismissal Motion shall be granted.

**BACKGROUND**

Most of the facts relevant to this contested matter were set forth in (1) my Memorandum Opinion, In re Jacono, 2005 WL 2077045 (Bankr. E.D. Pa. August 16, 2005) (the "2005 Opinion"), granting HUD relief from the automatic stay imposed in Debtor's prior and unsuccessful Chapter 13 case ("Jacono I") and (2) my Order in this case, dated October 10, 2006, Doc. No. 22, ("No Stay Order") denying Debtor's motion to extend the automatic stay beyond the 30-day period provided in § 362(c)(3) to a debtor who has had a prior bankruptcy case dismissed within twelve months and  Rather than reiterate the facts found in both of those adjudicatory documents, I will incorporate them as though set forth herein, supplementing only as to the new facts elicited at the hearing held on November 7, 2006 and as necessary to put those facts in proper context.

In the 2005 Opinion, I concluded that Debtor's proposed Chapter 13 plan (the "2005 Plan") was far too speculative to compel HUD to forbear until 2007 with no payment while its collateral diminished by reason of the growing tax liens arising because Debtor does not have the financial resources to pay real estate taxes. I was not convinced that the two essential components of the 2005 Plan necessary to pay HUD's secured claim in full (a new reverse mortgage and the proceeds of an eminent domain claim) would be accomplished by March 31, 2006, the date promised in the 2005 Plan, if at all. As the updated facts demonstrate, that conclusion was not misplaced since as of the November 2006 hearing date Debtor had still not secured the reverse mortgage and the eminent domain claim was no longer even mentioned as a potential source of funding of a Chapter 13 plan. With relief from stay granted in Jacono I, HUD returned to the District Court to complete its

foreclosure action, and Debtor did not resist the Chapter 13 trustee's motion to dismiss the bankruptcy case which had lost its utility with the lifting of the stay.

On March 3, 2006, the Honorable John Padova issued a sixteen-page Opinion and Order in favor of HUD, liquidating its claim at $189,754.44 plus $13.00 per day from the date of the order, foreclosing the mortgage lien on and allowing the sale of the Property and payment to HUD from its proceeds, and declaring that William and any heirs, executors and assigns of William (to wit, Debtor) as well as Robert Miller, Trustee Under Irrevocable Living Trust (the "William Trust") are "forever barred and foreclosed of all rights, claims, liens and equity of redemption in the mortgaged premises." United States v. Jacono, 2006 WL 560142, at *7 (E.D. Pa. March 3, 2006).[1]  Undeterred by this setback, Debtor filed another petition under Chapter 13 on September 8, 2006 ("Jacono II") before HUD could complete the permitted foreclosure.

As noted above, because Debtor had a case dismissed within twelve months of the filing of the new petition, the provisions of § 362(c)(3) attached.  Debtor thus filed a motion to extend the stay ("Extension Motion") which was opposed by HUD.[2]  In the No Stay Order,

---

[1] Defendants were represented by Dennis Dunne, Esquire ("Dunne") who testified that he continues to represent the William Trust in an appeal of the District Court judgment to the Third Circuit Court of Appeals.  In the District Court litigation, the William Trust unsuccessfully argued that HUD's lien rights were subordinate to an unrecorded deed transferring the Property from William to the William Trust.

[2] Whether the stay expires after 30 days as to property of the estate (thus requiring the extension) is an issue of some debate in the bankruptcy courts. Compare In re Clifton Williams, Jr., 346 B.R. 361 (Bkrtcy E.D. Pa. 2006) with In re Jupiter, 344 B.R. 754 (Bankr. D.S.C. 2006).  There has been no appellate decision notwithstanding the divergence of the decisional law. Perhaps for that reason, Debtor sought an extension of the stay where its only efficacy of the stay applied to HUD.  Both parties proceeded with an evidentiary hearing without raising the issue of whether the relief was necessary at all.

-3-

I concluded that the new case was presumptively filed not in good faith as to HUD as it had been granted relief from stay in the prior case, 11 U.S.C. § 362(c)(3)(C)(ii), and as to all creditors because there had not been a substantial change in the financial or personal affairs of Debtor since the dismissal of Jacono I. I found that Debtor had not taken any meaningful step toward pursing the reverse mortgage which continues to be the basis for addressing HUD's debt in a Chapter 13 plan and that by his own admission, the potential proceeds of a reverse mortgage would be insufficient to pay HUD in full. I found the newly discovered asset proferred to make up the shortfall, proceeds of a personal injury claim arising from an accident with a municipal truck in June 2006 (the "PI Claim"), too speculative to rebut the presumption that Jacono II was not filed in good faith.

Presumably uncertain whether it had relief from stay to proceed with its foreclosure as ordered by Judge Padova, see note 2 supra, HUD now files a motion to dismiss Jacono II with prejudice in order to bar Debtor's access to bankruptcy protection for 180 days so that it can complete its foreclosure unimpeded by the bankruptcy stay of yet another case. HUD argues that the extraordinary relief is warranted given the repeat bankruptcy filings without payment and the failure to propose any confirmable Chapter 13 plan. In response, Debtor urges the Court to find that a confirmable plan is in progress for the same reasons he asked the Court to extend the stay one month ago. Thus, the evidentiary hearing on the Dismissal Motion became the third opportunity for Debtor to attempt to convince me that he could propose a confirmable plan that would treat HUD's liquidated claim as required by the Bankruptcy Code.

At the Dismissal Motion hearing I witnessed the return of Dunne, the attorney for the

-4-

William Trust, who had just been retained at the time of the Extension Hearing to represent Debtor in connection with the PI Claim. At that time Dunne was fairly confident that liability would be established but had not developed his case on damages as Debtor was still undergoing medical evaluation. While Dunne, who had not yet filed the complaint on Debtor's behalf, could offer no estimate as to when a recovery could be expected, he speculated that he believed that an award of $100,000 would be possible. I found this testimony to be too speculative to serve as the foundation for a Chapter 13 plan that would require HUD to await payment until the proceeds of the litigation were received.[3] With the No Stay Order in mind, Dunne testified one month later that he now had a police report that established liability and had received some notes from Dr. Robert L. Knobler,[4] Ex. D-4, that showed a serious and permanent plexus injury.[5] He reiterated that it was too early to ask for a report from Dr. Knobler but nonetheless stated his belief that a settlement could be achieved in the $100,000 range in twelve to eighteen months. He did not state when the case would come to trial if a settlement in that range could not be negotiated.

Debtor also testified again in support of his Chapter 13 plan which proposes to pay HUD in full from the proceeds of a reverse mortgage and the PI Claim. Notably Debtor proffers no date by which the foregoing will occur while he continues to pay $10 per month

---

[3] I cannot help but note that I reached the same conclusion in the 2005 Opinion about the eminent domain claim which Dunne also was prosecuting and which he testified in Jacono I would be the source of funding for that plan.

[4] Dr. Knobler is a neurologist that Dunne states is highly regarded in his field.

[5] The notes, which were admitted without opposition, are unintelligible. Dunne provided little else to support the number he has affixed to the claim.

-5-

to the Chapter 13 trustee and nothing to HUD. While the Plan states that "if he cannot accomplish these ends, he will proceed to sell the Home," notably he made the same commitment in Jacono I and to date has not engaged a realtor. On the subject of the reverse mortgage, he claims to have moved the process along by completing the required counseling and applying for the reverse mortgage. Exhibit D-1 is a letter from Carmine Raspucci, Corp. Sec. ("Raspucci"), of Mortgage Network Solutions,[6] so stating and listing the other conditions that are "in the process of being completed." Although an appraisal was obtained on October 31, 2006, Exhibit D-2, Debtor has not addressed title, liens and taxes, the other conditions which must be reviewed and found to meet the "Guidelines for Reverse Mortgage Loan," to secure the HECM. To my inquiry, Debtor stated that Raspucci was not provided title information (which would have revealed that title was not in Debtor's name), but knew about the HUD mortgage (although with a payoff as of six months ago) and the real estate taxes. Presumably Raspucci must believe that the purpose of his letter is to show that an application has been made, since the other conditions cannot be met given that the available proceeds of the reverse mortgage will not satisfy liens and title is not in Debtor's name.[7] It is clear that Debtor has hardly advanced the ball with this element of his Chapter 13 plan. Nor am I impressed with Debtor's generalized contention that his advancing age improves his prospects for a larger reverse mortgage. Accepting that proposition would reward Debtor for obstructing HUD whose claim continues to increase with the passage of time

---

[6] While originally described by Debtor as a lender, it is clear that Raspucci is a mortgage broker.

[7] When asked whether Raspucci had a solution to these problems, Debtor acknowledged that Raspucci had never done a reverse mortgage and indeed had asked Debtor why he did not seek conventional financing, obviously knowing little about Debtor's financial circumstances.

through non-payment, interest accrual and the advancement of taxes and insurance. In short, the updated picture is no more impressive that the record made twice before.

**DISCUSSION**

In this case HUD filed an action in the District Court in 2004 to foreclose its reverse mortgage on the Property. As a reverse mortgage, it had become due when William died in October 2003. Exhibit B to Dismissal Motion. On April 18, 2005 William's son James, Debtor herein, filed a petition under Chapter 13 to stay the consequences of the District Court foreclosure litigation which appeared imminent. In that case, Jacono I, no payment was made to HUD, and HUD was compelled to pay real estate taxes on the Property which would prime its lien since Debtor did not pay them either. On August 16, 2005 I issued a comprehensive opinion rejecting Debtor's proposed plan as speculative and allowed HUD to continue with the stayed District Court litigation. HUD sought to do so. However, because Debtor did not resist the dismissal of Jacono I, he was in a position to file another petition as HUD neared the exercise of its foreclosure remedy. The second petition filed by Debtor on September 9, 2006, accomplished its intended purpose to halt the District Court action. The two back to back bankruptcy cases have stayed HUD for over 1/1/2 years, and the record made in this case convinces me that it is no closer to realizing on its secured claim through a reorganization in this case than it was in the last one. The bottom line of Debtor's position is that HUD should indefinitely await the speculative fulfillment of Debtor's conditions precedent to funding his Plan while HUD's secured position continues to erode.

This premise is antithetical to bankruptcy policy which entails a careful balancing of the debtor's right to a fresh start and the creditor's right to adequate protection of its interest in property. In re Wile, 310 B.R. 514, 517 (Bankr. E.D. Pa. 2004).

The court may dismiss a case under § 1307(c)(1) for unreasonable delay that is prejudicial to creditors.[8] Courts have not hesitated to dismiss on this ground when the sole object of the bankruptcy is to obstruct a foreclosing creditor without any real prospect of reorganization. See, e.g., In re Spear, 203 B.R. 349 (D. Mass 1996); Wile, supra; In re Rashier, 283 B.R. 544 (Bankr. W.D. Mo. 2000); In re Fricker, 116 B.R. 431 (Bankr. E.D. Pa. 1990); In re Clark, 86 B.R. 593 (Bankr. E.D. Ark. 1988). Moreover, as it appears clear that Debtor has utilized the bankruptcy stay twice to impede HUD's legitimate remedies without the ability to propose a confirmable plan, something more than dismissal is required to preclude a repetition as HUD moves once again to exercise its rights.

HUD has asked for a bar on refiling for 180 days, a remedy that I have granted when I have found serial petitions filed for the sole purpose of invoking the automatic stay of § 362(a). In re Dami, 172 B.R. 6, 11 (Bankr. E.D. Pa. 1994). The authority to grant such relief has been found in Bankruptcy Rule 9011, incorporating Fed.R.Civ.P.11. In re Narod,

---

[8] Section 1307(c) allows a court to dismiss or convert for cause, whichever is in the best interests of creditors. Whether to dismiss or convert is left to the discretion of the bankruptcy judge. Sievers v. Green (In re Green), 64 B.R. 530, 530-31 (BAP 9th Cir. 1986); In re Smith, 85 B.R. 729, 730-31 (E.D. Va. 1988); In re White, 126 B.R. 542, 546-47 (Bankr. E.D. Ill. 1991). Since the only other real creditors are taxing authorities with obligations arising from the Property, the dismissal and liquidation of the Property, as requested by HUD, would be in the best interest of creditors here. A review of the Schedules does not support conversion since there would be no asset for a Chapter 7 trustee to administer other than the recently identified tort claim which would be eroded by attorney's fees and Debtor's exemption. HUD, which seeks dismissal, would be entitled to the overwhelming portion of the remaining distribution.

138 B.R. 478, 482 (E.D. Pa. 1992) (sanctions imposed under Rule 9011 are not limited to expenses or fees); In re Jones, 117 B.R. 415, 420 (Bankr. N.D. Ind. 1990) ([W]here a debtor files a petition in bankruptcy with no intention of obtaining the benefits or the goals for which the proceeding was designed, the Bankruptcy Code is being abused and bankruptcy rule 9011 is implicated).  Other courts have relied on their discretionary power under § 349, see, e.g., Spears, 203 B.R. at 353-54; In re McKissie, 103 B.R. 189, 193 (Bankr. N.D. Ill. 1989); or § 105, see, e.g., Spears, 203 B.R. at 354; In re Earl, 140 B.R. 728, 741 (Bankr. N.D. Ind. 1992); Clark, 86 B.R. at 595, to enjoin future filings to prevent abuse of the bankruptcy process.  While this case does not have the indicia of bad faith present in some other cases where the repeat filings have been more numerous before the creditor seeks to stop the bankruptcy cycle, it nonetheless evidences a determination by this Debtor to reside under the protection of the bankruptcy stay until every hope of raising funds to pay HUD has been dashed.  If HUD's secured position was not eroding during the stay, more time might be an appropriate balance of the parties' respective interests.  However, Debtor continues to reside in the Property without payment to HUD or the taxing authorities after the District Court has held that he has no interest to protect.  Notably the bar order I will enter will allow Debtor to make application to this Court to refile should there be a change in circumstances that would suggest a reorganization is feasible.  This relief merely shifts the burden to Debtor to earn his injunction, obviating the opportunity to halt the foreclosure again by simply filing another petition.

In re James F. Jacono - Bankruptcy No. 06-13912DWS

An Order consistent with the foregoing Memorandum Opinion shall issue.

*[signature: Diane W. Sigmund]*

DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge

Dated: November 30, 2006

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| JAMES F. JACONO, | : | Bankruptcy No. 06-13912DWS |
| Debtor. | : | |

# ORDER

**AND NOW**, this 30th day of November 2006, upon consideration of the (1) confirmation of Debtor's amended Chapter 13 plan and (2) the Motion to Dismiss the Chapter 13 Case with Prejudice ("Dismissal Motion") filed by the United States of America through the Department of Housing and Urban Development ("HUD"), after notice and hearing and for the reasons stated in the accompanying Memorandum Opinion;

It is hereby **ORDERED and DECREED** that:

1. Confirmation of the Plan is **DENIED**.

2. The Dismissal Motion is **GRANTED**, and the Chapter 13 case is **DISMISSED**.

3. Debtor is barred from filing a further bankruptcy petition for 180 days without leave of this Court.

_____
DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge